In re Richard BRACEY, Debtor.

FRANCHISE TAX BOARD, STATE
OF CALIFORNIA, Appellant,

v.

Richard BRACEY, Appellee.

No. 94–56227.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 5, 1996.

Decided Feb. 21, 1996.

Anthony Sgherzi, Deputy Attorney General, Los Angeles, California, for appellant.

Bradford E. Henschel, Century City, California, for appellee.

Before: POOLE, WIGGINS, and RYMER, Circuit Judges.

PER CURIAM:

The California Franchise Tax Board (FTB) appeals the decision of the Bankruptcy Appellate Panel (BAP), holding that the FTB violated 11 U.S.C. § 524 by attempting to collect delinquent prepetition taxes from former Chapter 7 debtor Richard Bracey. We have jurisdiction, 28 U.S.C. § 158(d), and we affirm in part and reverse in part.

## I

On February 23, 1988, the FTB sent Bracey a notice of proposed tax assessments for the tax years 1983 and 1984. In response, Bracey's attorney sent a letter of protest dated April 21, 1988. Although the cover letter accompanying Bracey's protest referred to both the 1983 and 1984 assessments, the protest itself addressed only the 1984 assessment. Bracey did not sign the protest himself. He had, however, previously sent a letter to the FTB giving power of attorney to his lawyer. The FTB received Bracey's protest on May 5, 1988.

On June 16, 1989, Bracey filed a voluntary petition for Chapter 7 bankruptcy. He obtained a debtor's discharge on October 24, 1989. Subsequently, the FTB notified Bracey of its intent to collect the taxes assessed and due for the 1983 and 1984 tax years. Bracey responded by filing a motion in the bankruptcy court, seeking to have the FTB held in contempt for violation of the discharge order. The bankruptcy court concluded that Bracey had filed a timely protest, which prevented the FTB's proposed assessment from becoming final, and so denied Bracey's motion. The BAP reversed, holding that Bracey's protest was untimely because it was not received by the FTB until after the protest period had expired. This appeal followed.

## II

The FTB contends that Bracey's tax assessment protest is valid because Bracey mailed it within 60 days of the assessment. We agree.

Bracey received a discharge in bankruptcy pursuant to 11 U.S.C. § 727. Under § 727(b), a debt is excepted from discharge if it is excepted under 11 U.S.C. § 523. At the time of Bracey's discharge, § 523, in turn, excepted from discharge taxes "of the kind and for the periods specified" in § 507(a)(7). 11 U.S.C. § 523(a)(1)(A).[1] Finally, § 507(a)(7) excepts any income tax "other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case." 11 U.S.C. § 507(a)(7)(A)(iii). In other words, if the 1984 tax assessment was not yet made when Bracey filed for bankruptcy, the assessment was excepted from discharge.[2]

A tax deficiency is "assessed" for purposes of rendering the assessment nondischargeable not when the notice of the assessment is filed, but when the assessment becomes "final." *In re King*, 961 F.2d 1423, 1427 (9th Cir.1992). "In California, this final date is no less than 60 days after the issuance of the notice of proposed additional tax." *Id.* This is because Calif.Revenue & Taxation Code § 18590[3] provides that

---

1. Section 507 has since been revised such that the former § 507(a)(7) now appears as § 507(a)(8). Correspondingly, the current version of § 523 refers to § 507(a)(8) rather than § 507(a)(7).

2. The FTB contends that Bracey protested both the 1983 assessment and the 1984 assessment, relying on the fact that the cover letter accompanying his protest mentions both years. The protest itself, however, addresses only the 1984 assessment; accordingly, the 1983 assessment was not stayed and so is not excepted from discharge. We affirm as to it.

3. Section 18590 has been replaced by the nearly identical § 19041, but it was in force at the time in question.

"[w]ithin 60 days after the mailing of each notice of additional tax proposed to be assessed the taxpayer may file with the Franchise Tax Board a written protest against the proposed additional tax, specifying in the protest the grounds upon which it is based." If no protest is filed within 60 days, the assessment becomes final. *See* former Calif.Revenue & Taxation Code § 18591.[4]

■ The issue before us is whether Bracey's protest was filed within the 60-day time limit. Bracey argues that he did not meet the time limit because his protest was not filed until it was received, and it was not received until after the 60–day period had run. The FTB, on the other hand, argues that Bracey did meet the time limit because his protest letter was deemed filed as soon as it was sent, and it was sent before the time period expired.

Although the California Revenue & Taxation Code does not define "filed," there is a definition in the California Government Code:

> If an application, tax return or claim for credit or refund required by law to be filed with the State or state agency on or before a specified date is filed ... postage prepaid, it shall be deemed filed on the date shown by the post office cancellation mark stamped on the envelope containing it, or on the date it was mailed if proof satisfactory to the state agency establishes that the mailing occurred on an earlier date.

Cal.Gov't Code § 11003.

Because the envelope was not offered into evidence, we cannot determine whether the date of the cancellation mark falls within the 60–day period. This is not necessary, however. Section 11003 explicitly puts the determination of the mailing date within the discretion of the agency. The FTB followed its internal procedures to conclude that the filing date of the protest was the date that appeared at the top of the protest letter. Because Bracey's tax deficiency was not assessed until after he filed for bankruptcy, the assessment is excepted from discharge.

## III

■ Bracey responds that his protest was invalid nonetheless because it was signed by his attorney, not by Bracey himself, and because it was not accompanied by a power of attorney. This argument fails because Bracey had previously sent a letter to the FTB giving power of attorney to his attorney. As Bracey himself concedes, "[n]o power of attorney is [even] required as evidence of the authority of the taxpayer's representative to discuss the case, provided the taxpayer has indicated in the protest *or otherwise*, a desire to be so represented." (Emphasis added). Bracey's letter to the FTB easily meets this test.

AFFIRMED in part and REVERSED in part.

---

4. This has since been replaced by § 19042.